MAYBERRY *v.* STATE.

Crim. 3949

Opinion delivered September 23, 1935.

*Rains & Rains,* for appellant.

*Carl E. Bailey,* Attorney General, and *Guy E. Williams,* Assistant, for appellee.

JOHNSON, C. J. Appellant was indicted by the grand jury of Crawford County for the crime of second degree murder, committed by the shooting and killing of one Jim Thompson. Upon a subsequent trial he was convicted of manslaughter, and appeals to this court for relief.

The first assignment of error relates to the alleged insufficiency of the testimony to support the judgment of conviction. Without discussing in detail the testimony adduced on behalf of the State, it was to the following effect: That on or about October 20, 1934, appellant, Mayberry, was assisting in scavenger work for the town of Alma, Arkansas, and that about dark of said day appellant and other laborers proceeded to the dumping ground for the purpose of unloading their wagon. The deceased was hidden in a hole situated in the dumping grounds. When appellant stopped his wagon for the purpose of unloading same, deceased crawled out of the hole where he was hidden, and appellant shot him with a shotgun. From the effects of this wound the deceased lingered a few days and died. This testimony was amply sufficient to support the verdict of the jury, and this contention is without merit.

The second assignment of error relates to the admission of an alleged dying declaration of the deceased. This alleged dying declaration was admitted under the following testimony as a predicate thereto.

"He told the prosecuting attorney and I the day before he died that they had informed him he would not get well. * * * Q. Did he make any statement as to whether he was going to die? A. He did the time before—next to the last time I was there."

Conceding without deciding that this testimony established the fact that the deceased on the day before he made his alleged dying declaration had the belief that his dissolution was imminent and impending, yet this was an insufficient predicate to admit a dying declaration

made on a subsequent date. Underhill's Criminal Evidence, fourth edition, page 383, states the applicable rule as follows: "The burden is on the one offering a dying declaration in evidence to show that such declaration was made under a sense of death, but the burden does not rest on such party to show that the decedent was rational at the time such declaration was made. A predicate laid to admit a dying declaration in evidence is not sufficient to introduce a dying declaration made on a later date unless declarant was then under belief of impending dissolution." See also *Weakley* v. *State,* 168 Ark. 1087, 273 S. W. 374.

From the authorities cited we conclude that no proper predicate was laid for the admission of the deceased's dying declaration, and that the trial court erred in admitting it in testimony.

In view of another trial we shall discuss certain instructions requested by appellant and refused by the trial court in his charge to the jury. These requested instructions read as follows:

"2. The jury are instructed that, if you believe from the evidence in this case the deceased first attempted to assault defendant with intent to kill or do him great bodily harm, the defendant was not bound to retreat, but might stand his ground, and, if need be, kill his assailant; and, if he fired the shot believing this was the intention of his assailant, that he was justified in this, though you find from the evidence that the danger was merely apparent."

"3. The court instructs the jury that a person attacked does not have to wait until the party attacking has assaulted him, but if, acting as a reasonably prudent person, the defendant believed the said Thompson was in the act of doing him great bodily harm or taking his life, he had the right to defend himself, though you may believe, at the instant, the said Thompson was not in reach of him with his club."

Appellant testified in his own behalf as follows: "My name is Earl Mayberry, I am now living at Muskogee. Last October I lived at Alma, and will be 50 years old

the 29th of this month. I was acquainted with Thompson, I sold him a mule and he worked it out, and we bought a cow together, and when we settled up there was a dollar between us, and I paid him in molasses, and we were picking cotton for Logan Gentry, I went down in Corn to get a drink, and Thompson followed me and said he was going to stomp every gut out of me, and he was too much man for me, and I refused to fight. I quit that night and went up home to work, and he quit and was sneaking up around there. On the night we had the trouble when we got out to the hole Thompson came crawling out on his hands and knees with a 2 x 4 in his hands. I throwed my gun on him and told him to beat it three times. He made one step and got straight and throwed his hand to his hip and I shot him. He had threatened my life and I was afraid of him, he was too much man for me. That night before I got to the hole, I started between sundown and dark, and Thompson was behind some brush and had a club about so long. I got about as far from here to you, and he said, 'Stop; I am going to break your neck. I have been after you for a month.' I said, 'Stop or I will fill your hide full of holes.' ''

Appellant's testimony quoted above squarely presented the issues covered by his requested instructions numbered 2 and 3, and they should have been given to the jury in charge by the trial court. We cannot agree that the issues presented in these requested instructions were fully covered by the court's general charge. If the testimony on retrial is substantially the same as presented here by this record, these or instructions of similar import should be given in the court's charge.

For the error indicated, the judgment is reversed, and remanded for new trial.